UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, Frank Harrison and Marvin Dunn, Relators,

v.

Honorable V. Murray JORDAN, Judge of the 198th Judicial District Court of Kerr County, Respondent.

No. 04-84-00521-CV.

Court of Appeals of Texas, San Antonio.

Jan. 21, 1985.

Philip Durst, Austin, for relators.

Jim M. Perdue, Perdue, Turner & Berry, Houston, William Dixon Wiles, Dallas, Paul M. Green, Ron H. Mata, San Antonio, for respondent.

Before CADENA, C.J., and CANTU and DIAL, JJ.

## OPINION

CANTU, Justice.

The University of Texas Health Science Center at San Antonio, Frank Harrison and Marvin Dunn, the President and Dean of

the Medical School respectively, Relators, seek a writ of mandamus to compel Honorable V. Murray Jordan, Judge of the 198th Judicial District Court of Kerr County, to withdraw his discovery order dated November 15, 1984, entered in Cause No. 83–28–B styled, *William Reid McClellan and Petti McClellan, Surviving Father and Mother of Chelsea Ann McClellan, a minor, Deceased v. Kathleen Holland, M.D. and Genene Jones, et al.,* requiring production and discovery of a variety of records in possession of the Medical School (UTHSC/SA).

The question presented is the applicability and scope of TEX.REV.CIV.STAT.ANN. art. 4447d, § 3 (Vernon 1976) to a medical school.

Relators argue that the statute precludes discovery of various and specifically identified documents which have been ordered produced and designated discoverable.

William Reid McClellan and wife, as the real parties in interest and as plaintiffs in the suit in which the discovery of the record has been ordered, argue that Relators have not shown entitlement to the writ because of failure to comply with the rules of civil procedure relevant to mandamus proceedings in this court [1] and because the items sought to be discovered are not protected from discovery under the provisions of Article 4447d. We agree with the Relators as to a majority of the documents sought to be protected from discovery.

The McClellans, as plaintiffs, originally instituted suit against Dr. Kathleen Holland alone, alleging that nurse Genene Jones, while under the employ of Dr. Holland, inflicted injuries upon their minor child, Chelsea Ann McClellan. Plaintiffs alleged and relied upon a theory of negligent hiring and a failure to supervise Jones. Jones was subsequently added as a defendant. Prior to her employment by Dr. Holland, Jones was employed by the Bexar County Hospital Pediatric Intensive Care Unit.

Plaintiffs subsequently amended their petition to include the Bexar County Hospital District (Hospital), its top administrators (B.H. Corum and William Thornton) and one of its nursing supervisors (Patricia Belko) as defendants.

Plaintiffs alleged that these new defendants failed to advise the public in general, the medical profession and more specifically Dr. Holland of dangerous propensities on the part of nurse Jones.

Relator (UTHSC/SA) pursuant to an affiliation agreement provides medical personnel to the Hospital (now known as Medical Center Hospital) for the Pediatric Intensive Care Unit maintained by and housed in the hospital.

Plaintiffs then amended their petition to include as defendants the UTHSC/SA, its president and dean alleging that these defendants also failed to terminate and warn the public, the medical profession and Dr. Holland of nurse Jones's "propensities".

Prior to the filing of the lawsuit, the Bexar County District Attorney undertook an investigation into the conduct of nurse Jones during her employment at the Hospital. As a result of the investigation undertaken, the Bexar County Grand Jury subpoenaed a variety of records from numerous sources, including the Hospital and UTHSC/SA. UTHSC/SA supplied all requested information to the Grand Jury.

After the filing of the lawsuit but prior to the Hospital and UTHSC/SA being made defendants, the plaintiffs filed in the trial court their "Amended Motion for Production."

The motion was directed at the then defendants Dr. Holland and nurse Jones as well as to (then non-defendant) Medical Center Hospital, Sam Millsap, District Attorney of Bexar County, and Ron Sutton, District Attorney of Kerr County.

By this motion plaintiffs sought to inspect and copy:

1. All written letters, notes or other tangible writing from GENENE

---

1. Whatever infirmity the Petition for Mandamus may have had was corrected with the filing of a

Supplemental Petition at the time the cause was submitted.

JONES to KATHLEEN HOLLAND dealing with the following matters:

a. Suicide notes or similar memorandum.

b. Memorandum, notes or tangible writings relating to CHELSEA ANN McCLELLAN, which written materials are not otherwise contained in the patient's office chart which has previously been produced.

c. All applications for employment, personnel file or other writings dealing with the employment by KATHLEEN HOLLAND of GENENE JONES.

d. All office records, charts and other material prepared by either KATHLEEN HOLLAND or GENENE JONES relating to the treatment and care of:

(1) Brandy Lee Benites.

(2) Christopher Parker.

(3) Jimmy Pearson.

(4) Misty Reichenau.

(5) Jacob Evans.

(6) Rolinda Ruff.

2. All reports letters or correspondence from the Bexar county Hospital (Medical Center Hospital of San Antonio) from or to the Communicable Disease Center, or similar agency of the United States Department of Health relating to that agency's analysis, investigation or inquiry into deaths which occurred at the Bexar County Hospital in the Pediatric Intensive Care Unit during the years 1978 through 1982 inclusively.

3. The personnel records of Nurse GENENE JONES maintained by the Bexar County Hospital, such record to include all matters in writing maintained in connection with the employment of GENENE JONES including performance analysis and reports, Supervisor's Job Performance Reports and similar materials.

4. All in house investigations conducted by any individual or groups assigned to investigate, analyze or determine the explanation and cause of deaths occurring in the Pediatric Intensive Care Unit in the years 1978 through 1982 inclusively. Said "Request" is deemed to include all drafts and copies of said reports, whether such were considered the final reports, amended reports, or otherwise. Said reports include but are not limited to, the following:

a. "Report of suspicious Deaths".

b. Conn Report.

c. Mangus Report.

5. The Patient's Census or Log Book maintained in the Pediatric Intensive Care Unit and particularly those entries relating to deaths of infants in said unit in the years 1980, 1981, and 1982 inclusively.

6. The list or other written material prepared by Nurse Suzana Maldanodo summarizing infant deaths in the PDICU, which list has been turned over either to the Bexar County District Attorney or representatives of the Bexar County Hospital.

7. All correspondence, memorandum or instruments in writing relating to the resignation or termination of Dr. James Robotham from his position as Director of the Pediatric Intensive Care Unit at the Bexar County Hospital.

8. All recommendations, letters, or other material in writing relating to the reasons for discharge and/or termination of employment of GENENE JONES and her reemployability status.

9. A list of all nurses who worked in the PDICU at the Bexar County Hospital during the year 1981.

10. All minutes of the meeting which occurred during the week of approximately January 31, 1982 between Dr. B.J. Corum, Dr. Marvin Dunn, Dr. James Robotham and others relating to the deaths occurring in the Pediatric ICU at the Bexar County Hospital. Said minutes to include the identification of all persons present as well as any other notations relating to matters considered and discussed at said meeting.

11. All letters and transmittal correspondence relating to all reports, analysis and consideration of reports prepared by individuals or groups on behalf of the Bexar County Hospital relating to the mortality rate of the Pediatric Intensive Care Unit, deaths in said unit or similar subjects.

12. A true and correct copy of the Supplemental Autopsy Report prepared by Kathleen Kagan-Hallet, M.D.

Although filed as of January 9, 1984, the motion for production was not urged until after the Hospital and UTHSC/SA had been joined as party defendants.

On November 2, 1984, UTHSC/SA, its president and dean filed objections to the plaintiffs' amended motion for production. In the objections the Relators asserted a statutory privilege in many of the documents requested, even though requested from the Hospital and the aforementioned district attorneys. Relators invoked the provisions of Article 4447d and TEX.R. CIV.P. 166b(3)(d) as to the items sought in requests 4, 6, 7, 8, 10, and 11 of plaintiffs' discovery motion. However, Relators' prayer sought to protect only requests 4, 7, 8, 10, and 11 under the privilege afforded by the Statute and rule.

On November 7, 1984, a hearing was held on "Plaintiffs' Amended Request for Production." The Hospital produced the requested items in sealed envelopes and the Bexar County District Attorney delivered to the District Clerk of Kerr County a sealed box containing the material subpoenaed.

Respondent Jordan then conducted an *in camera* inspection of the items furnished by the Bexar County District Attorney and on November 15, 1984, issued the order which forms the basis of this proceeding.

The order recites that all items inspected *in camera* and contained within the box produced by the Bexar County District Attorney are deemed to be discoverable and that none of the items are privileged under article 4447d, section 3. The order does not mention Rule 166b(3)(d).

Relators argue that the order entered by respondent requires the production and discovery of documents not requested by plaintiffs' motion.

Since only certain items were sought to be protected under the statute and rule and because we are asked to declare that only those items are privileged we do not concern ourselves with the scope of discovery as it affects other items examined but not complained of, even if originally not requested.

Relators have included, as exhibits to their petition for writ of mandamus, those items sought to be protected under the statute. They have been conveniently packaged in segregated envelopes marked "A" through "E".

Each envelope contains a label identifying the contents as follows:

Envelope "A" allegedly contains the report, drafts and working papers of a Hospital Committee chaired by Dr. A.W. Conn which was established pursuant to UTHSC/SA by-laws to investigate and make recommendations concerning the quality of care provided in the Pediatric Intensive Care Unit. The items are said to correspond to plaintiffs' requested item 4(a).

Envelope "B" allegedly contains the reports, minutes and working papers of a hospital committee chaired by Dr. John Mangos, chairman of the Medical School Department of Pediatrics, which was established pursuant to UTHSC/SA by-laws to investigate and make recommendations concerning the mortality rate and causes of death of critically ill children in the Pediatric Intensive Care Unit. The items are said to correspond to plaintiffs' requested items 4(c) and 11.

Envelope "C" allegedly contains the reports, minutes, proceedings and recommendations of the "Pediatric Intensive Care Unit Committee" chaired by Medical School Faculty Member Dr. Arthur McFee and which was established pursuant to UTHSC/SA and Hospital by-laws to coordinate and supervise all areas of care provid-

ed within the Pediatric Intensive Care Unit. These items were not included within the discovery motion filed by plaintiffs but were deemed discoverable under Respondent's order since they were contained within the box of material provided by the Bexar County District Attorney.

Envelope "D" allegedly contains the minutes, reports and recommendations of a Hospital committee chaired by Dr. Howard Radwin and which was established as an ad hoc committee pursuant to Hospital by-laws to investigate and make recommendations concerning the quality of care in the Pediatric Intensive Care Unit in late 1981 and early 1982.

These items were not included within the discovery motion filed by plaintiffs but were deemed discoverable under Respondent's order since they were contained within the box of material provided by the Bexar County District Attorney.

Envelope "E" allegedly contains the working papers, notes, and investigative reports performed by or at the request of members of the various committees previously identified. Relators assert a dual privilege in these documents under article 4447d as part of the work product of a hospital committee and under TEX.R. CIV.P. 166b(3)(d) as communications among agents or employees of a party, made for the purpose of investigating the events upon which a suit is based. These items were not included within the discovery motion filed by plaintiffs but were deemed discoverable under Respondent's order since they were contained within the box of material provided by the Bexar County District Attorney.

TEX.REV.CIV.STAT.ANN. art. 4447d, § 3 provides:

The records and proceedings of any hospital committee, medical organization committee or extended care facility committee established under state or federal law or regulations or under the by-laws, rules or regulations of such organization or institution shall be confidential and shall be used by such committee and the members thereof only in the exercise of

the proper functions of the committee and shall not be public records and shall not be available for court subpoena; provided, however, that nothing herein shall apply to records made or maintained in the regular course of business by a hospital or extended care facility. No physician, hospital, organization, or institution furnishing information, data, reports or records to any such committee with respect to any patient examined or treated by such physician or confined in such hospital or institution shall, by reason of furnishing such information, be liable in damages to any person. No member of such committee shall be liable in damages to any person for any action taken or recommendation made within the scope of the functions of such committee if such committee member acts without malice and in the reasonable belief that such action or recommendation is warranted by the facts known to him.

TEX.R.CIV.P. 166b(3)(d) provides:

The following matters are not discoverable:

with the exception of discoverable communications prepared by or for experts, any communication passing between agents or representatives or the employees of any party to the action or communications between any party and his agents, representatives or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation or defense of the claim or the investigation of the occurrence or transaction out of which the claim has arisen; and

Relators point out that in early January of 1982, UTHSC/SA together with the administrators of the Bexar County Hospital, established several separate committees to investigate the quality of care being provided in the Pediatric Intensive Care Unit during the immediate preceding years. These committees, UTHSC/SA alleges, were comprised of members of the medical school faculty and members of the Bexar County Hospital District Staff and were organized

to investigate and issue recommendations regarding improving different aspects of the quality of care provided in the Pediatric Intensive Care Unit.

Relators urge us to ascertain the applicability of Article 4447d to the various documents claimed to be privileged by first determining whether the several committees identified were established under the by-laws, rules or regulations of the institution asserting the privilege. We agree with this approach and will adhere to it in our analysis of the various documents.

■ We begin with Relators' admission that the items contained within envelope "D" are the product of an ad hoc committee established pursuant to *Hospital by-laws.* Applying the foregoing test, the proper institution to assert the privilege is the Hospital, and the Hospital has not complained of the trial court's ruling in the proceeding before us and presumably is no longer asserting a privilege with regard to these documents, if it ever did.

■ Envelopes "A" and "B", according to Relators, contain documents which are the product of a Hospital Committee established pursuant to UTHSC/SA by-laws. Under the foregoing test these documents would enjoy the privilege asserted by Relators.

■ Envelope "C", Relators assert, contains documents which are the product of committee established pursuant to the by-laws of both, the Hospital and the UTHSC/SA. Such a committee would be common to both and under the holding in *Texarkana Memorial Hospital, Inc. v. Jones,* 551 S.W.2d 33, 35 (Tex.1977) the privilege of confidentiality afforded to records and proceedings of *any* medical organization committee would extend to such a committee, even if answerable to different entities.

■ The contents of envelope "E" are not claimed to be records and proceedings of any committee. Rather it is alleged, the documents constitute working papers, notes and investigative reports of various individuals who are also members of the committees heretofore described. Privilege is sought under Article 4447d and TEX.R.CIV.P. 166b(3)(d). Such items will be protected if they constitute work product of a committee or communications among agents or employees of a party made for the purpose of investigating the events upon which a suit is based.

We now examine the contents of each envelope to determine its entitlement to the privilege.

■ Envelope "A" contains the results of an on-site evaluation of the Pediatric Intensive Care Unit conducted the middle of February, 1982, by a team of visiting physicians headed by Dr. A.W. Conn at the request of Dr. B.H. Corum, Executive Director, Bexar County Hospital District and Dr. Marvin Dunn, Dean of the Medical School. Included are the on-site visit schedule, Preliminary report, final report and two memorandums from Dr. James L. Robotham detailing recommended changes. The purpose of the evaluation is listed as "improvement in the quality of care of critically ill children in Bexar County."

Envelope "B" contains reports from a record review committee headed by Dr. John Mangos and created at the request of Dr. Corum and Dr. Dunn to follow-up on the on-site evaluation by reviewing records of patients cared for in the Pediatric Intensive Care Unit during calendar year 1981.

Envelope "C" contains memorandum of minutes and summaries of those minutes of several meetings of the Pediatric Intensive Care Unit Planning and Policy Committee headed by Dr. Arthur McFee. All the instruments are prepared by Dr. McFee for dissemination of the several members of the committee and to Dr. Corum and Dr. Dunn.

Envelope "D" contains a memorandum from Dr. Howard M. Radwin, president of the Medical-Dental Staff to Dr. Robotham, director of the Pediatric Intensive Care Unit and to a director of Nursing requesting both to look into the quality of care in the Pediatric Intensive Care Unit and to report their findings to an ad hoc commit-

tee to be chaired by Dr. Radwin. Also included are the minutes of the committee meeting wherein the findings were discussed and plans made for the on site evaluation to be conducted by Dr. Conn.

■ Envelope "E" contains the personal notes of individual members of the various committees established to investigate unexpected events in the Pediatric Intensive Care Unit. There are also included, memorandums from members of the committees to other members and to the chairman of the appropriate committee. These memorandums and notes are all related to the continuing investigation into the quality of care being administered by the Pediatric Intensive Care Unit of the hospital. These documents constitute the deliberations of the very group of persons sought to be protected when functioning as a committee. As such their deliberations fall within the protection of Article 4447d, § 3. *Texarkana Memorial Hospital, Inc. v. Jones, supra* at 35.

There are, however, included within the papers four letters written by either Dr. Robotham or Dr. Dunn which, although touching upon the events involving the internal probe into the functioning of the Pediatric Intensive Care Unit, are more of a personal nature.

These letters dated March 2, 1982, March 25, 1982, March 26, 1982, April 5, 1982, April 12, 1982 and March 4, 1983, are not the products of a committee nor related to their proper functions although they might incidentally touch upon the subject matter entrusted to an investigating committee. Nor do we think that these letters are protected by TEX.R.CIV.P. 166b(3)(d) as a communication between agents or representatives or the employees made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation or defense of the claim or the investigation of the occurrence or transaction out of which the claim arose.

The letters, plainly and simply, are Dr. Robotham's efforts to defend his performance as chairman of the Department of Pediatrics following his replacement in that capacity by Dr. John Mangos and the response to those efforts by the Dean of the Medical School. One other letter from Dr. Dunn to the Executive Vice Chancellor for Health Affairs, The University of Texas System, appears to be an elaborate detailing of the evaluative efforts into the Pediatric Intensive Care Unit and subsequent corrective measures taken.

The letters more accurately fall within the category of business and administrative files and papers not forming a part of the committee deliberations. Their confidentiality is not preserved by the statute or the rule. *Texarkana Memorial Hospital, Inc. v. Jones, supra* at 35; Butler, *Hospital Peer Review Committees: Privileges of Confidentiality and Immunity*, 23 S.TEX. L.J. 45 (1982).

■ In summary, we conclude that all the items contained in envelopes "A", "B" and "C" are protected by the privilege of confidentiality afforded by Article 4447d § 3. The items contained in envelope "D" are also afforded the privilege of confidentiality as deliberations of a Hospital committee. The Hospital is not asserting the privilege so far as the record before us reflects. We hold that Relators may not assert the privilege for the Hospital even if the documents are also in the possession of the medical school. Inasmuch as the discovery order applies to both the Medical School and the Hospital and the Hospital appears to have complied with the subpoena request without objection we see no harm in declining to recognize Relators' standing to assert a privilege not intended by the statute.

The contents of envelope "E" are also protected by the privilege of confidentiality with the exception of those letters previously identified and which we now segregate into our envelope "E" for identification purposes.

We, therefore, hold that the statute prevents discovery of all the items except those contained in Envelope "D" and our Envelope "E". The order of the trial court

must, therefore, be withdrawn and modified by the trial court to permit discovery only of those items not protected by the privilege as per the guidelines established in this opinion. The writ of mandamus will not issue unless the trial court fails to comply with this order.