**The Honorable V. Murray JORDAN, Judge, Relator,**

**v.**

**The Honorable COURT OF APPEALS FOR the FOURTH SUPREME JUDICIAL DISTRICT, Respondent.**

No. C–3990.

Supreme Court of Texas.

Nov. 20, 1985.

Rehearing Denied Jan. 15, 1986.

Perdue, Turner & Perry, Jim M. Perdue and Andrew L. Todesco, Houston, for relator.

Jim Mattox, Atty. Gen., Philip Durst, Asst. Atty. Gen., Austin, Lang, Cross, Ladon, Boldrick & Green, Paul M. Green, San Antonio, Bailey & Williams, William Dixon Wiles, Dallas, Nicholas & Barrera, Ron H. Mata, San Antonio, for respondent.

McGEE, Justice.

This is an original mandamus action. Relator, the Honorable V. Murray Jordan, Judge of the 198th Judicial District Court in which the underlying cause of action is pending, determined that various medical documents were not privileged and ordered production. Relator now petitions this court to issue a writ of mandamus directing the Court of Appeals for the Fourth Supreme Judicial District to rescind its order finding most of the documents protected from discovery. We conditionally grant the relief requested.

Chelsea Ann McClellan died September 17, 1982 while under the medical care of Dr. Kathleen Holland. Chelsea's death occurred while being transported from Kerrville to San Antonio, Texas; she was being attended by Nurse Genene Jones. William and Petti McClellan, the surviving parents, brought a wrongful death action against Dr. Holland and her office nurse, Ms. Jones. It was alleged that Dr. Holland had negligently hired Nurse Jones and subsequently failed to properly supervise the nursing care given by her.

Prior to her employment with Dr. Holland, Nurse Jones worked in the Pediatric

Intensive Care Unit (PICU) of Bexar County Hospital. The unit was staffed by medical personnel provided by The University of Texas Health Science Center at San Antonio (UTHSCSA). The McClellans alleged that Nurse Jones had acted incompetently during her previous employment and her former employers had failed to alert the public, the medical profession and specifically Dr. Holland of her dangerous propensities. Thereafter, the McClellans named as defendants the Bexar County Hospital, Administrators B.H. Corum and William Thornton and Nursing Supervisor Patricia Belko. Also named were UTHSCSA, its President, Dr. Frank Harrison, and Dean, Dr. Marvin Dunn.

Before trial, the McClellans sought discovery of various hospital documents including, among other things, the employment history of Genene Jones, any records of studies conducted to investigate the cause of deaths occurring in the PICU, minutes of any committees relating to such investigations, and any writings pertaining to the resignation of the PICU medical director. A number of documents were in the possession of the Bexar County District Attorney, who had previously initiated a Grand Jury investigation of Nurse Jones. Although UTHSCSA, Dr. Harrison and Dr. Dunn claimed that the documents were privileged, the documents were delivered to the trial court. After an *in camera* inspection, the trial court ordered all the documents discoverable. The court of appeals disagreed and found most of the papers privileged.

The documents were segregated, according to subject matter, into sealed envelopes marked A through E. Envelope A contains papers of a hospital committee chaired by Dr. A.W. Conn, established to investigate the quality of care provided in the PICU. Envelope B contains papers of a hospital committee chaired by Dr. John A. Mangos, established to investigate the causes of deaths in the PICU. Envelope C contains papers of the Pediatric Intensive Care Unit Committee chaired by Dr. Arthur McFee and established to coordinate and supervise the care provided by the PICU. Envelope D contains the papers of a hospital committee chaired by Dr. Howard Radwin and established to investigate the quality of care in the PICU. Envelope E contains a variety of papers and notes made by different people, including some made by members of the hospital committees.

The issue presented is whether a privilege exists to protect the various documents from discovery and, if so, has the privilege been properly claimed and preserved.

Tex.Rev.Civ.Stat.Ann. article 4447d, section 3 (Vernon 1976), provides:

The records and proceedings of any hospital committee, medical organization committee or extended care facility committee established under the state or federal law or regulations or under the bylaws, rules or regulations of such organization or institution shall be confidential and shall be used by such committee and the members thereof only in the exercise of the proper functions of the committee and shall not be public records and shall not be available for court subpoena; provided, however, that nothing herein shall apply to records made or maintained in the regular course of business by a hospital or extended care facility. . . .

The initial determination of whether a privilege exists depends upon the meaning of the statutory language, "records and proceedings." Relator claims that the privilege only protects the actual recordation of the committee's deliberations. It does not, according to relator, extend to factual documents which were considered by the committee or the committee's recommendations, once they became actual policies of the hospital. Respondent contends that the privilege applies to all documents prepared by or at the direction of the committee members. This would arguably include all factual data gathered by the committee, records of deliberations, and subsequent recommendations.

The legislative history surrounding section three is sparse. During the 61st Leg-

islature, there was an original and amended version of House Bill 1208, which was subsequently enacted as Tex.Rev.Civ.Stat. Ann. art. 4447d, § 3. The original version of the proposed section three provided, "[a]ll records, data and knowledge collected for or by individuals or committees assigned this review function shall be confidential and ... shall not be available for court subpoena." [1] The bill analysis, accompanying the original draft, explained that the privilege protected "records kept by hospital review boards."

The original version was amended by a House Committee and the result is the present statutory scheme: "records and proceedings ... shall be confidential ... and not be available for court subpoena...." The amended version was adopted by the House and passed the Senate without any changes or further legislative comment.

In *Texarkana Memorial Hospital, Inc. v. Jones*, 551 S.W.2d 33 (Tex.1977), the applicability and scope of section three was considered, for the first time, by this court. Although minutes of hospital committee meetings were protected from discovery, the scope of the privilege was defined as follows:

Nothing that is said in the statute or in this opinion would prevent the proof or discovery of matters otherwise permitted over the objection that such evidence has been previously presented to the Hospital committee. The presentation of evidence or opinion to a Hospital committee during its deliberations does not thereby make that evidence or opinion privileged if offered or proved by means apart from the record of the committee. The effect of the statute is simply to prevent the discovery and use of the records and proceedings of the committee.

*Id.* at 36. In *Hood v. Phillips*, 554 S.W.2d 160, 167 (Tex.1977), the same statutory privilege did not extend protection to a physician's records, even though the same records may have been included in records of other hospital committees.

The statutory privilege protecting "records and proceedings" must be balanced with other competing policy considerations. Privileges are not favored in the law and are strictly construed. 3 *Jones on Evidence* § 21.1 at 745 (6th ed. 1972). Privileges contravene "the fundamental principle that 'the public ... has a right to every man's evidence.'" *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980) (quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950)). Although exempting from discovery "any matter protected from disclosure by privilege," Tex.R.Civ.P. 166b(3)(e), our rules of civil procedure encourage and permit liberal discovery practices, even including information "reasonably calculated to lead to the discovery of admissible evidence." Tex.R.Civ.P. 166b(2)(a).

The deliberations of a hospital committee are protected from discovery. *Texarkana Memorial Hospital, Inc. v. Jones*, 551 S.W.2d at 35. Accordingly, we find that the statutory language, "records and proceedings" means those documents

---

**1.** The complete text of the original section three in House Bill 1208 was:

Sec. 3. Governing boards of hospitals shall cooperate with the State Department of Health by insuring the selection of a medical staff, and providing for the quality of care rendered in the hospital. Such cooperation shall include but not be limited to insuring that physicians admitted to practice in the hospital are granted hospital privileges consistent with their training, experience and other qualifications; insuring that physicians admitted to practice in the hospital are organized into a medical staff in such a manner as to effectively review the professional practices

of the hospital and physicians for the purposes of reducing morbidity and mortality, and for the improvement of the care of patients provided in the institution. This review shall include but shall not be limited to the quality and necessity of the care provided and the preventability of complications and deaths occurring in the hospital. All records, data and knowledge collected for or by individuals or committees assigned this review function shall be confidential and shall be used only for the purposes provided in this Act, shall not be public records and shall not be available for court subpoena.

generated by the committee in order to conduct open and thorough review. In general, this privilege extends to documents that have been prepared by or at the direction of the committee for committee purposes. Documents which are gratuitously submitted to a committee or which have been created without committee impetus and purpose are not protected. In addition, the privilege extends to minutes of committee meetings, correspondence between committee members relating to the deliberation process and any final committee product, such as recommendations.

■ Envelope A contains five papers of the "Conn Committee"; a committee established under a UTHSCSA by-law to investigate the quality of care provided in the PICU. Three of the documents are clearly privileged: the Preamble and Schedule of On-Site Visit to the PICU, the Preliminary Report of the Visit, and the Final Report of the Visit. The two remaining documents, a memorandum and letter, were not shown to be generated by a hospital committee or any of its members for any committee purpose and, therefore, are not privileged.

■ Envelope B contains two papers of the "Mangos Committee"; a committee established under a UTHSCSA by-law to investigate the causes of deaths in the PICU. Both documents are reports prepared by the Mangos Committee and are privileged.

■ Envelope C contains six papers of the "PICU Committee"; established by UTHSCSA by-laws to coordinate and evaluate the care provided by the PICU. The various documents are minutes or summary of minutes of the PICU committee. All the documents are prepared by the committee and are for committee purposes. Thus, all six documents are privileged.

■ Envelope D contains two papers of the "Radwin Committee"; an ad hoc committee of the Bexar County Hospital District. One of the documents is the minutes of the committee's meeting, the other is a memorandum announcing the committee's initial meeting and requesting certain persons to investigate and report findings to the committee. Since the Bexar County Hospital is not asserting a privilege, both documents are discoverable.

■ Envelope E contains 18 separate documents. Four of the documents are letters between Dr. Robotham and Dr. Dunn, discussing the former's actions as chairman of the department of Pediatrics. A fifth letter is by Dr. Dunn to the Executive Vice-Chancellor for Health Affairs, addressing the same topic. These documents are clearly not "records or proceedings" of a hospital committee and are not afforded a privilege.

■ The remaining 13 documents present a more difficult decision. Two of the documents are "Notes to the File" written by Dr. Franks. The documents do not reflect that they were created for or by the direction of a committee; rather, the notes appear to be for Dr. Frank's personal use. These two documents are not shown to be privileged. Another document is a memorandum to Dr. Victor German requesting that he submit information to Dr. Robotham or Dr. Franks regarding any unexplained complications in the PICU. The record does not reflect whether this request was by a committee; however, even if a committee did request the information, the document does not enjoy the privilege. Four other documents are from Dr. German to Dr. Franks or Dr. Robotham. Information is given regarding various patients treated in the PICU. The record does not reflect that the creation of this information was generated by a hospital committee for a committee purpose. Similarly, the remaining six documents, one being a duplicate of a document contained in Envelope A, are not clearly shown to be papers generated by a hospital committee for a committee purpose. Therefore, these last ten documents are not privileged.

Having determined that the privilege exists for some of the documents, we turn to the remaining issue as to whether the privilege has been waived.

■ The burden of proof to establish the existence of a privilege rests on the one

asserting it. *Griffin v. The Honorable R.L. Smith*, 688 S.W.2d 112, 114 (Tex. 1985); *The Honorable David Peeples, District Judge v. The Honorable Fourth Supreme Judicial District Court of Appeals*, 701 S.W.2d 635, 29 Tex.S.Ct.J. 13 (Tex. 1985). If the matter for which a privilege is sought has been disclosed to a third party, thus raising the question of waiver of the privilege, the party asserting the privilege has the burden of proving that no waiver has occurred. *Compare* Tex.R. Evid. 501 *with* Tex.R.Evid. 511.

 The record in the present case is completely silent as to the circumstances surrounding the disclosure of the documents to the Bexar County grand jury. It is unclear from the record how and by what means the grand jury came into possession of the documents. It is the rule in Texas that the protections afforded by a privilege are waived by voluntary disclosure of the privileged documents. *Eloise Bauer & Associates, Inc. v. Electronic Realty Associates, Inc.*, 621 S.W.2d 200, 204 (Tex.App.—Texarkana 1981, writ ref'd n.r. e.). We hold that under the present circumstances, the real parties at interest, UTHSCSA, Dr. Harrison, and Dr. Dunn, failed to carry their burden to prove no waiver occurred. The record in this case will not support a holding that the disclosure of the documents to the Bexar County grand jury did not constitute a waiver of the privilege.

Therefore, we find that some of the documents are within the privilege of article 4447d, section 3; however, the privilege has been waived and the documents are discoverable. The various other documents were not afforded a privilege because they were not shown to be "records and proceedings" of a hospital committee and likewise are discoverable.

"The admission of evidence and scope of discovery largely rests within the discretion of the trial court." *Ginsberg v. The Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex.1985). The court of appeals abused its discretion by disturbing the trial court's judgment.

Because we have found that all of the documents are discoverable, we need not now address the issue of whether article 4447d is constitutional.

Accordingly, we hold the court of appeals abused its discretion in holding that the trial court abused its discretion. We are confident that the court of appeals will vacate its order. A writ of mandamus will issue only if the court of appeals fails to do so.

ROBERTSON, J., files a concurring opinion in which CAMPBELL, RAY and KILGARLIN, JJ., join.

GONZALEZ, J., files a concurring and dissenting opinion.

ROBERTSON, Justice, concurring.

I concur. I agree with the determination by the court that the privilege claimed by the petitioners has been waived. For that reason it is not necessary, nor constitutionally permissible, to determine whether there would have been a privilege on each document within each envelope. This court held in *United Services Life Insurance Co. v. Delaney*, 396 S.W.2d 855, 861 (Tex.1965): "... the constitutional provisions relating to this Court and the Court of Civil Appeals do not authorize said courts to render advisory opinions." Although I do not necessarily approve of the court of appeals' construction of the statutory privilege, that portion of this court's opinion, not being dispositive of the case, can only be advisory. *See Central Surety & Insurance Corp. v. Anderson*, 445 S.W.2d 514 (Tex. 1969); *Firemen's Ins. Co. of Newark, New Jersey v. Burch*, 442 S.W.2d 331 (Tex.1968).

CAMPBELL and RAY, JJ., join in this concurring opinion.

GONZALEZ, Justice, concurring and dissenting.

I agree with the determination by the court as to which documents are privileged. However, I disagree that the privilege has been waived. More importantly, I disagree

with the majority's shift of the burden of proof on the waiver issue.

The court mistakenly holds that mere possession of documents by the Grand Jury creates a presumption that those documents were voluntarily disclosed by the real parties at interest—the University of Texas Health Science Center at San Antonio, Dr. Harrison, and Dr. Dunn (hereinafter called Health Care Providers).[1] According to the majority, the record's silence as to the manner in which the Grand Jury acquired the documents is fatal to the claimed privilege because the parties relying on the privilege did not affirmatively undertake to *disprove* waiver. 701 S.W.2d 644. However, Health Care Providers have expressly claimed their statutory privilege at all stages of this proceeding. No argument is made that there was any express waiver of the privilege. The majority's finding of waiver, then, must be "implied" from the Health Care Providers' actions with respect to the privileged materials.

The court's opinion creates a two prong test for persons asserting a privilege: First, the privilege claimant must establish entitlement to protection within the narrow confines of the privilege; second, the claimant must establish that the privilege has not been waived.

I take issue with the second prong of the court's analysis. The question of waiver becomes relevant only after the privilege is found to exist. Waiving a privilege is not the same as failing to prove the privilege existed in the first instance. Waiver provides the proponent of the evidence with a justification for admitting the information despite the fact that it is privileged. In this context it is much like a plea in confession and avoidance. *See* Tex.R.Civ.P. 94.

The party seeking to benefit by the determination of waiver has the burden to obtain a ruling in his favor. *See Wash-*

*ington v. Reliable Life Ins. Co.,* 581 S.W.2d 153 (Tex.1979). The court in this case adopts the opposite approach when it states:

> If the matter for which a privilege is sought has been disclosed to a third party, thus raising the question of waiver of the privilege, the party asserting the privilege has the burden of proving that no waiver has occurred.

701 S.W.2d at 649. It is not surprising that the court cites no authority for this proposition.

The majority's approach makes the disclosure of the privileged material an automatic waiver without considering whether the disclosure was voluntary. The mere fact that the Grand Jury in this case acquired the privileged documents does not establish waiver. The relevant question regarding waiver is not whether the Grand Jury had possession of the documents, but *how* the Grand Jury acquired possession of the documents.

When a specific act of waiver is brought before the court, the privilege claimant may properly have the burden of establishing that there was no waiver. Where, however, as in this case, the claimant is required to disprove the existence of all conceivable acts of waiver—*when no act(s) of waiver have been asserted*—the privilege claimant should not be required to show "no waiver." The party that stands to benefit from the finding of waiver can easily indicate to the court the grounds upon which it relies. In fact, in this case, Plaintiffs could have asked the Bexar County District Attorney how he came into possession of the privileged documents. They did not. I will not indulge in the assumption adopted by the court that if a third party has in its possession the privileged documents, the privilege claimant must have voluntarily relinquished control.

1. Even though the style of the case indicates that Judge Jordan is the sole relator, he is only a nominal party. The true relators, William Reid McClellan and Patti McClellan, are specified in Relator's Motion to File and in his Petition for Writ of Mandamus. They are named as parties plaintiff at trial below. The better practice would be for the true relators to also be named in the style of the cause.

Other Texas cases have held that the proponent of privileged evidence, as opposed to the privilege claimant, has the burden to show that the privilege has, in fact, been waived. In *West v. Solito*, 563 S.W.2d 240 (Tex.1978), this court dealt with assertions of waiver raised in a discovery mandamus. The proponents of the privileged evidence asserted three grounds of waiver, all of which were denied by the court because "[b]ased upon the facts and arguments presented to us, the Respondent's allegations of a waiver of Relator's attorney/client privilege cannot be supported at this time. Accordingly, Relator was entitled to assert the privilege...." *Id.* at 244–45. *See also Eloise Bauer & Assoc., Inc. v. Electronic Realty Assoc., Inc.*, 621 S.W.2d 200, 204; *Burnett v. State*, 642 S.W.2d 765 (Tex.Crim.App.1982); *Chacko v. State*, 630 S.W.2d 842 (Tex.Crim. App.1982); *Cruz v. State*, 586 S.W.2d 861 (Tex.Crim.App.1979). Under the court's new rule, the proponents of the privileged evidence in *West* would not have had to support their claims of waiver in the trial court. The majority's approach is clearly contrary to this court's treatment of the waiver issues in *West*. Furthermore, the applicable statutory provision for confidentiality of medical committee reports does not require a showing that the privilege has *not* been waived. *See* Tex.Civ.Stat. Ann. art. 4447d, § 3.

The record is silent as to how the Grand Jury obtained the records in question.[2] Some basic policy considerations dictate a finding against waiver. The public policy of vigorous prosecution of those that violate the law should be a factor against a finding of waiver. By holding that the statutory privilege has been waived because of cooperation with the Grand Jury, the court discourages full disclosure by those with knowledge of relevant facts. Persons or institutions will be reluctant to fully provide information because of potential civil liability. In turn, this potential reduction in information will hinder law enforcement officials in bringing future wrongdoers to justice.

Particular reports and documents have different importance in the context of criminal investigations as opposed to civil litigation. Often, as in this case, the requested documents *are not* the only source of evidence on which a negligence action can be maintained.

Upon a silent record, the court has improperly shifted the burden of proving waiver onto the party asserting the privilege. For the above reasons, I dissent.

---

2. Complying with a grand jury's subpoena is not a voluntary disclosure relating to a subsequent civil action. See *In Re LTV Securities Litigation*, 89 F.R.D. 595, 605–06 (N.D.Tex.1981).